

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-20-2007

# USA v. Ventura

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4940

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Ventura" (2007). *2007 Decisions.* Paper 1456.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1456

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 05-4940

———

UNITED STATES OF AMERICA

v.

JOSE VENTURA,
a/k/a POCHO,
a/k/a POCHI

Jose Ventura,
Appellant

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 03-cr-00746-1)
District Judge: Honorable John J. Lifland

———

Submitted Under Third Circuit LAR 34.1(a)
March 8, 2007

Before: SLOVITER and AMBRO, Circuit Judges, and POLLAK,* District Judge

(Filed : March 20, 2007)

OPINION

———

SLOVITER, Circuit Judge.

———

* Hon. Louis H. Pollak, Senior Judge, United States District
Court for the Eastern District of Pennsylvania, sitting by
designation.

Appellant Jose Ventura was charged on February 11, 2003 with conspiracy to possess and distribute cocaine in violation of 21 U.S.C. § 846. The charge arose out of his activity on July 13, 2002 when he went to the Newark International Airport to meet Gorabell Alicea, who was on a flight from the Dominican Republic carrying three bottles containing 3,919 grams of liquid cocaine in her luggage. When questioned by law enforcement agents, she stated that she carried the cocaine pursuant to an arrangement with Ventura and that he promised to pay her $5,000 to make the trip.

Ventura was questioned by federal officers on July 22, 2002. Ventura, who was actively cooperating with law enforcement at the time, denied that he was at Newark Airport on the day of Alicea's arrival to meet her. He did state that Alicea had been recruited for a drug smuggling operation headed by Edwin Ventura. However, after Jose Ventura was arrested on February 11, 2003, he admitted he was involved in the importation conspiracy and that in fact he was at the Newark Airport to pick up Alicea on the day of her arrest. He also admitted that he had introduced potential drug buyers to Edwin Ventura on several occasions.

Apparently law enforcement officials permitted Ventura to remain at large while he continued to cooperate. Finally, on October 23, 2003, he pled guilty to conspiring with others to distribute and to possess with the intent to distribute more than 500 grams of cocaine. It appears that he continued to cooperate with the Government while he was at large, but he fled before the date set for his sentencing, July 23, 2004, and became a fugitive. He was not arrested until May 23, 2005, more than a year later, and thereafter

2

offered to resume his cooperation.  This time the Government rejected his offer and refused to move for a downward departure based on Ventura's earlier cooperation.

Thereafter, Ventura pled guilty pursuant to a plea agreement.  The District Court determined that Ventura was a career offender, and that his offense level accordingly would have merited a sentence from 262 months to 327 months.  However, notwithstanding Ventura's flight, the District Court reduced Ventura's offense level by three points for acceptance of responsibility, reducing his sentencing range to 188 to 235 months, and then further reduced the sentence by eight months in recognition of Ventura's previous cooperation.  Accordingly, the District Court sentenced Ventura to 180 months incarceration followed by four years supervised release.

Ventura's counsel has filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967).  Under <u>Anders</u>, if, after review of the district court record and a conscientious investigation, counsel is convinced that the appeal presents no issue of arguable merit, counsel may properly ask to withdraw while filing a brief referring to anything in the record that might arguably support the appeal.  <u>See</u> <u>id.</u> at 741-42, 744.  To satisfy the <u>Anders</u> requirements, appellant's counsel must "satisfy the court that he or she has thoroughly scoured the record in search of appealable issues" and then "explain why the issues are frivolous."  <u>United States v. Marvin</u>, 211 F.3d 778, 780 (3d Cir. 2000) (citation omitted).

Ventura was advised of his right to file a <u>pro</u> <u>se</u> brief in this court but he has not done so.  Thus, we are left with counsel's statement that he has thoroughly examined the

record for appealable issues, including issues pertaining to the voluntariness of defendant's plea, and he has asked for permission to withdraw as counsel.

In order to fulfill our obligation to decide whether to accept counsel's <u>Anders</u> brief and permit counsel to withdraw, we review not only the brief itself but the record on appeal, in particular the colloquy held by the District Court to determine whether the guilty plea was entered knowingly and voluntarily, and that the defendant's waiver of his or her rights to indictment was knowing and voluntary. The District Court closely examined Ventura. The Court asked Ventura about his background, his state of health, whether he had been hospitalized or treated for narcotics addiction, whether he was presently on any medication, and asked him whether he used any narcotic drugs within the last twenty-four hours. Ventura responded that he never used drugs.

In response to the Court's questions, Ventura stated he had been furnished with a copy of the charges, and those charges were read to him by the District Court. The District Court, after advising Ventura of his constitutional right to be charged by a grand jury, ascertained from Ventura that he understood his rights to indictment by grand jury, that no threats or promises were made to get him to give up his right to indictment, and that he thought it was the best thing for him to waive his right to indictment. The Court then concluded that Ventura's waiver of his right to indictment was knowing and voluntary.

Moving to the next issue, Ventura, in response to the District Court's questions, stated that he was aware of the written plea agreement, that he was pleading guilty of his

4

own free will because he was guilty, that he understood the result of such a plea, and that he knew the penalty was a statutory minimum of five years and a maximum of forty years imprisonment, as well as a $2 million fine. Ventura also stated that he understood that the sentence imposed by the Court after it had had an opportunity to review the presentence report might be different from any estimate he had been given, and that the Court had the authority to depart from the Guidelines and impose a sentence that is more or less severe than that called for by the Guidelines. The Court advised Ventura that his agreement waives or limits his right to appeal or collaterally attack the sentence and that his waiver limits his right to appeal or attack his sentence. After some additional inquiry with respect to the effect of the guilty plea, the Court then inquired of Ventura of the details of the crime, in particular his recruiting of couriers to bring cocaine into the United States from the Dominican Republic, and in that connection Ventura admitted that he recruited a courier to bring cocaine into the United States on July 13, 2002. After an additional inquiry with respect to Ventura's knowledge of the crime to which he was pleading, the District Court found that Ventura was fully competent and capable of entering an informed plea, that he was aware of the nature of the charges and the consequences of the plea, and found the plea was a knowing and voluntary plea.

At the sentencing hearing the District Court determined that Ventura was a career offender. He had two prior drug convictions and had been sentenced on both. The Court noted that the two sentences are not related because they were separated by an intervening arrest and the participants and other circumstances of the offenses were different.

5

Accordingly, the Court determined that the instant offense to which Ventura pled guilty was his third drug conviction.

In his Anders brief, counsel conceded that the sentencing court properly calculated the sentencing guidelines and made several discretionary rulings that were extremely favorable to Ventura. The Court found that he was entitled to a three point reduction for acceptance of responsibility despite the fact that he fled prior to sentencing. This determination by the Court reduced Ventura's minimum guideline range by seventy-four months. In addition, the Court recognized Ventura's cooperation and reduced the guidelines an additional eight months even though the Government refused to move for a reduction in sentence for cooperation.

In his Anders brief, Ventura's counsel reviewed all the arguable issues, and determined that the District Court correctly found Ventura to be a career offender, properly found the applicable sentencing range, which, after determining that Ventura's offense level was thirty-four with a criminal history category of VI, resulted in a sentencing range of 262 to 327 months. Counsel also noted that the Court exercised its discretion in favor of Ventura by finding that he had accepted responsibility under Guideline § 3E1.1 and exercised its discretion in favor of Ventura by reducing his sentence by eight months in recognition of his cooperation.

We agree with counsel that there are no nonfrivolous issues raised. The plea colloquy was adequate and Ventura gave a knowing, voluntary, and informed admission to the charges and he knowingly and voluntarily waived his right to appeal. Following

our independent examination of the briefs and the record, we conclude that counsel has fulfilled his obligation under <u>Anders</u>.  Accordingly, we will grant counsel's motion to withdraw and will affirm the judgment of sentence and conviction.

_____